IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DON MALLORY AND TY FARRELL § | |
| § | CIVIL ACTION NO.  3:17-cv-3063 |
| § | JURY DEMANDED |
| VS. § | |
| § | |
| § | |
| LEASE SUPERVISORS, LLC § | |

**PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND
CROSS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Lease Supervisors, LLC (hereinafter "Lease Supervisors") filed a Motion for Summary Judgment claiming that Plaintiffs were not employees as a matter of law and therefore not entitled to overtime wages. Plaintiffs would show the Court that not only should Defendant's motion should be denied, but Plaintiffs should be found to be employees of Defendant as a matter of law.

## I.  INTRODUCTION.

Plaintiffs filed suit against their former employer, Lease Supervisors, LLC seeking overtime wages. It is undisputed that Lease Supervisors failed to pay Plaintiffs overtime wages. The only issue for the Court is whether Plaintiffs are employees of Defendant. Under well-established standards in the Fifth Circuit, Plaintiffs should be found to be employees of Lease Supervisors as a matter of law.

## II.  LEGAL STANDARDS FOR SUMMARY JUDGMENT MOTIONS.

Summary judgment may be sought on  "part of [a] claim or defense," and should be granted if the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment [on that issue] as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." This burden will not be satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). A dispute as to a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (emphasis added) (internal citations omitted); *see also Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009).

### III.     STATEMENT OF FACTS APPLICABLE TO EMPLOYEE STATUS.

Plaintiffs continuously worked for Defendant, Lease Supervisors, LLC and were classified as 'members' of the LLC by Defendant. Plaintiffs were issued member interests in the Lease Supervisors LLC; however, they gave *de minimus* consideration for the member interests, were never paid anything other than the 'guaranteed payments' from Lease Supervisors and were not provided any of the information customarily provided to company owners. Lease Supervisors never disclosed anything to Plaintiffs regarding the operation of the company and discouraged members from asserting their putative 'rights' as members. Plaintiffs contend that they were misclassified as non-employees and should have been paid overtime wages. Courts may find workers to be employees under the Fair Labor Standards Act ("FLSA") as a matter of law. The undisputed facts demonstrating Plaintiffs' misclassified contractor status are overwhelming, and

summary judgment should be granted in their favor on this issue.

### 1. *Lease Supervisors, LLC is an Oilfield Services Company Providing Pumping Services to O'Ryan Oil & Gas*

Lease Supervisors, LLC operates wells and gas plants owned by O'Ryan Oil & Gas.[1]

### 2. *Plaintiff and Class Members Worked Solely for Defendant*

Plaintiffs were engaged to work for Defendant to provide pumping services for Defendant.[2]

### 3. *Plaintiffs and Class Members Performed "Pumping or Operating" Work for Defendant*

Plaintiff and the Class Members performed pumping or operator duties consisting of overseeing the plant, maintenance, creating production reports and making sure the plant was up and running.[3]

### 4. *Plaintiffs Were Required to File Daily Production Reports.*

Plaintiffs faxed daily forms created by Lease Supervisors, LLC to document their work.[4]

### 4. *Defendant Kept No Records of Hours Worked by Plaintiff and the Class Members*[5]

### 5. *Plaintiffs Worked More Than 40 Hours Per Week.*[6]

### 6. *Plaintiffs Did Not Negotiate Their Pay Rate.*[7]

### 7. *Lease Supervisors, LLC Assigned All Work to Plaintiffs*.[8]

### 8. *Plaintiffs Worked on a Schedule Set by Lease Supervisors, LLC*

---

[1] Ex A – Kayla Miller (7:9-8:1).
[2] Ex B – Ty Farrell (18:7-10); (25:5-19)
[3] Ex B – Ty Farrell (14:23-15:3)(25:20-24); Ex C - Don Mallory (47:19-49:3)
[4] Ex A - Miller (8:16-10:2) include exhibits; Ex B - Farrell (29:1-3); Ex D - Miller v. 2 (39:20-25)(46:12-14)
[5] Ex A - Miller (24:24-25:2)
[6] Ex B - Farrell (27:11-19); Ex C - Mallory (52:22-55:1)
[7] Ex D - Miller v. 2 (45:8-22)
[8] Ex D - Miller v. 2 (48:5-14)

Plaintiffs worked on a set schedule for Lease Supervisors, LLC.[9] The workers received their job assignments, as directed by Lease Supervisors, LLC personnel.[10]

### 9. *Plaintiffs Were Required to Follow Lease Supervisors, LLC Policies*

Plaintiff and Class Members were required to abide by the company agreement as members of Lease Supervisors.[11]

### 10. *Defendant Provided the Tools Required to Perform the Work*

Lease Supervisors, LLC provided the tools required for the work performed by Plaintiffs.[12]

### 11. *Plaintiff and the Class Members Were Paid "Guaranteed Payments" by Lease Supervisors and No Overtime Wages.*

Defendant paid Plaintiffs "Guaranteed Payments" as members of the LLC and no other compensation regardless of the number of hours worked.[13]

### 12. *Plaintiffs Personally Provided Services*

Plaintiff all personally provided the services under the arrangement with Defendant.[14]

### 13. *Plaintiffs Were Employed for an Indefinite Period of Time*

None of the Plaintiffs had a specific period of time for which they were employed by Defendant.[15]

### 14. *Plaintiffs were Covered by an Employee Benefit Plan Created by Lease Supervisors.*

Plaintiff had health insurance issued by Lease Supervisors.[16] Plaintiffs were also

---

[9] Ex C - Mallory (88:19-89:6)
[10] Ex D - Miller v.2 (43:16-19)
[11] Ex B - Farrell (38:1-39:3)
[12] Ex B - Farrell (38:12-18).
[13] Ex A - Miller (23:24-24:7) – include Ex 10 from her deposition; (24:20-23) Include Ex 11.
[14] Ex D - Miller v.2 (45:20-46:3)
[15] Ex D - Miller v. 2 (46:4-11)
[16] Ex A - Miller (11:12-21)

beneficiaries of a 401k Plan issued by Lease Supervisors.[17]

### 15.  *The Member Agreement for Plaintiffs Refers to 'Employment'*

The Operating Agreement stated that "the members further understand that should their employment be terminated for any reason whatsoever, including death, their membership in the company shall terminate."[18]

### 16.  *Plaintiffs Did Not Exercise Any Rights as Members of Lease Supervisors, LLC.*

Even though Plaintiffs were 'members' of the LLC, they were discouraged from exercising any rights as a member.[19] Other than the initial $100 contribution, Plaintiffs were not required to make any investment in Lease Supervisors.[20]

### 17.  *Plaintiffs Did Not Realize Profit or Loss From the Operation of the Wells*[21]

## IV. ARGUMENTS AND AUTHORITIES

**A.  "Employee v. Independent Contractor" - The Question Presented is a Legal Question for the Court.**

The determination of whether a particular factual setting gives rise to coverage under the FLSA is a matter of law. *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984); see also Wherley v. Schellsmidt, No. 3:12-CV-0242-D, 2013 WL 5744335, *3 (N.D. Tex. Oct. 23, 2013) (Fitzwater, J.) ("The ultimate determination of whether an individual is an employee under the FLSA is a legal, and not factual, finding."). *Lovo v. Express Courier Int'l, Inc.*, No. 4:16-CV-853-Y, 2019 WL 387367, at *2 (N.D. Tex. Jan. 30, 2019).

---

[17] Ex E - 401k plan document from other case
[18] Ex A - Miller 17:16-25) include Ex 5.
[19] Ex B - Farrell (46:2-22)
[20] Ex D - Miller v. 2 (48:15-18)
[21] Ex D - Miller v. 2 (48:19-22)

B.     **Breadth Of "Employee" Status Under The FLSA**.

The employer-employee relationship under the FLSA is broadly defined. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728-29 (1947); *see also Nationwide Mutual Ins. v. Darden*, 503 U.S. 318, 326 (1992) (noting the "striking breadth" of the expansive definition of employee under the FLSA). Indeed, "[t]he term 'employee' is … used [in the FLSA] in the **broadest sense ever** … **included in any act**." *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 665 (5th Cir. 1983) (citing *Donovan v. Am Airlines, Inc.*, 686 F.2d 267, 271 (5th Cir. 1982)) (emphasis added) (some ellipses in original) (internal quotation marks omitted). "These broad definitions have been considered consistent with the remedial purposes of the FLSA. They were aimed, in part, at eliminating the practices of companies who sought to reduce their labor costs (and to avoid obligations under federal labor laws) by using illegitimate contractors." *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp.2d 295, 327 (D.N.J. 2005), *aff'd sub nom. Zavala v. Wal-Mart Stores, Inc.*, 692 F.3d 527 (3d Cir. 2012) (citing *United States v. Rosenwasser*, 323 U.S. 360, 363 & n. 3 (1945)). To achieve the FLSA's purposes, any doubts regarding a worker's employment status must be resolved in favor of employment. *See Breaux and Daigle, Inc. v. United States*, 900 F.2d 49, 52 (5th Cir. 1990).

The FLSA's definitions establish the scope of the employment relationship under the Act and provide the basis for distinguishing between employees and independent contractors, or as in this case 'members'. The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. 203(e)(1), and "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. 203(d). The FLSA's definition of "'employ' includes to suffer or permit to work." 29 U.S.C. 203(g). This "suffer or permit" concept has broad applicability and is critical to determining whether a worker

is an employee and thus entitled to the Act's protections.

The "suffer or permit" standard was specifically designed to ensure as broad of a scope of statutory coverage as possible. See *Rosenwasser*, 323 U.S. at 362–63 ("A broader or more comprehensive coverage of employees … would be difficult to frame."); *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992) ("employ" is defined with "striking breadth"). The Supreme Court "has consistently construed the Act 'liberally to apply to the furthest reaches consistent with congressional direction,' recognizing that broad coverage is essential to accomplish the [Act's] goal …." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quoting *Mitchell v. Lublin, McGaughy & Assocs*., 358 U.S. 207, 211 (1959)) (internal citation omitted).[22]

C.  **Five-Factor "Economic Reality" Test**.

To determine whether a worker is an employee or contractor for FLSA purposes, courts in the Fifth Circuit "generally use as a guide five, non-exclusive factors: (a) the permanency of the relationship; (b) the degree of control exercised by the alleged employer; (c) the skill and initiative required to perform the job; (d) the extent of the relative investments of the worker and the alleged employer; and (e) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer." *Thibault v. Bellsouth Telecomm., Inc*., 612 F.3d 843, 846 (5th Cir. 2010); *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (same); *Carrell v. Sunland Const., Inc*., 998 F.2d 330, 332 (5th Cir. 1993) (same); See also: *Faulkner v. Patterson-UTI Drilling Co. LLC*, No. 6:12-CV-104, 2014 WL 12567150, at *6 (E.D. Tex. Jan. 30, 2014). "These five factors are merely aid to the analysis and no single factor is determinative." *Thibault*,

---

[22] Ex F -  DOL Wage and Hour Division Administrator's Interpretation No. 2015-1—The Application of the Fair Labor Standards Act's "Suffer or Permit" Standard in the Identification of Employees Who Are Misclassified as Independent Contractors.

612 F.3d at 846. The focus of the analysis is "whether, as a matter of economic reality, the worker [was] economically dependent upon the alleged employer or [was] instead in business for himself." *Hopkins*, 545 F.2d at 343.

D.  **Analysis**.

Applying the law and the economic realities to the facts of Plaintiffs' work for Defendant, there is no doubt they were, in fact, misclassified as an independent contractor.

1. *No investment required on Plaintiffs' behalf.*

Under this factor, courts balance the alleged employee's investment against the employer's investment in the specific job at hand. *Thibault*, 612 F.3d at 847 (comparing "the amount the alleged employer and employee each contribute to the specific job the employee undertakes.") Where the employer's investment in the job surpasses the worker's, this factor favors employee status. *Herman v. Express Sixty-Minutes Delivery Service, Inc.*, 161 F.3d 299 (5th Cir. 1998) (finding the plaintiffs' investment in delivery vehicles, insurance, radios, fuel, and delivery supplies insignificant compared to the defendant's investment in office space, office equipment, payroll, and other expenses). As is established by the summary judgment proof, Lease Supervisors, LLC provided all of the equipment necessary for Plaintiffs to perform their duties as operators. Plaintiffs did not incur any expenses in order to work for Lease Supervisors, LLC. Plaintiffs' initial $100 contribution is *de minimus*. Accordingly, this factor falls in favor of employee status.

2. *Opportunity for profit and loss out of Plaintiffs' control.*

When the alleged employer exerts such significant control over the worker's schedule that doing other work is practically impossible, the worker's control over profit and loss is limited.

*Cromwell*, 348 F. App'x at 61. Similarly, a worker's opportunity for profit and loss is severely limited where the putative employer-controlled Plaintiffs' opportunities for profits by fixing the hourly rate and the number of hours worked. See *Cromwell*, 348 F. App'x at 61 (concluding that the permanency and extent of the parties' relationship and the alleged employer's complete control over the plaintiffs' schedule and pay severely limited the plaintiffs' opportunity for profit or loss). See also: *Hobbs v. Petroplex Pipe & Constr., Inc.*, 360 F. Supp. 3d 571, 581 (W.D. Tex. 2019).

Here, it is undisputed Plaintiffs worked primarily, if not exclusively, for Lease Supervisors, LLC during their tenure with the company. It is also undisputed that Lease Supervisors, LLC set Plaintiffs' rate of pay without any negotiation. It is also undisputed Plaintiffs did not have to pursue consistent work from Lease Supervisors, LLC, instead Lease Supervisors, LLC procured all of the work for Plaintiffs. Lease Supervisors, LLC unilaterally decided to pay Plaintiffs a guaranteed payment regardless of the number of hours worked, Plaintiffs were unable to negotiate the day rate, Lease Supervisors, LLC did not share its profits or losses with Plaintiffs – even though they considered them *members of the LLC*. Also, as in *Faulkner*, the workers had no ability to negotiate their pay rates and the Defendant controlled the number of hours worked as was the case with Lease Supervisors, LLC. *Faulkner* at *3. Thus, the Court should find this factor weighs in favor of Plaintiffs' employee status.

### 3.   *Skill and Initiative Required for Plaintiffs' Work.*

Plaintiffs' job titles were "Pumpers" or "Plant Operators." However, there is no evidence that the workers were not required to have an advanced degree or certification to be hired as a pumper/plant operator. Plaintiffs received all of their job assignments from Lease Supervisors, LLC and were required to work using Lease Supervisors, LLC's tools, fill out Lease Supervisors, LLC's forms on each day. This factor favors Plaintiffs' employee status.

### 4. *Permanency: Plaintiffs were employed for an indefinite term.*

This factor considers the length of time the alleged employee worked for the employer, the basis of which the worker is hired, and the exclusivity of the work. The longer a worker remains exclusively at one company, the more likely the worker is an employee. *Cromwell*, 348 F. App'x at 61 (holding splicers who worked exclusively at one company for eleven months were employees); *Robicheaux*, 697 F.2d at 666 (classifying welders who worked from ten months to three years almost exclusively for one company as employees). Further, workers hired on an ongoing basis are much more likely employees. *Cromwell*, 348 F. App'x at 60 (finding employee status where the plaintiffs did not have a "temporary, project-by-project, on-again-off-again relationship with the purported employers"). Fifth Circuit precedent has suggested that, where a plaintiff works for a defendant for ten months, the engagement begins to resemble an employment relationship. *Robicheaux*, 697 F.2d at 666 (characterizing relationships that spanned from ten months to three years as lasting a "substantial period of time"). Here, Plaintiffs worked for Lease Supervisors, LLC primarily, if not exclusively, for their entire tenure with the company. This factor weighs in favor of employee status for Plaintiffs.

As all five factors weigh heavily in favor of Plaintiffs' employee status, this Court should deny Defendant's Motion and grant Plaintiffs' Cross Motion for Partial Summary Judgment on their employee status.

### E. <u>Subjective Beliefs Not Controlling</u>.

The contractual designation of the worker as "member" (or an independent contractor) is <u>not</u> controlling. *Thibault*, 612 F.3d at 845-46; *Marshall v. Presidio Valley Farms, Inc.,* 512 F. Supp. 1195, 1197 (W.D. Tex. Apr. 30, 1981) (Bunton, J.) (explaining calling a foreman a "crew leader" or "Farm Labor Contractor" does not make him an independent contractor for purposes of

the FLSA and stating, "Our law has hopefully progressed beyond Humpty Dumpty's pronouncement in Lewis Carroll's 'Through the Looking Glass': 'When I use a word it means just what I choose it to mean neither more nor less.'"). The "focal inquiry in the characterization process is thus whether the individual is or is not, as a matter of economic reality, in business for himself." *Robicheaux*, 697 F.2d at 666; *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir. 1987).

F.     **Cases Granting Plaintiff Summary Judgment on Employee Status**.

Courts will grant a plaintiff's summary judgment on the issue of their employee status. *Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 562 Fed. App'x 182, 184 (5th Cir. 2014) (affirming summary judgment of plaintiffs' employee status irrespective of defendant's testimony "that the plaintiffs were hired as independent contractors, and they signed contracts acknowledging that status," opining: "Neither a defendant's subjective belief about employment status nor the existence of a contract designating that status is dispositive. [Citing *Robicheaux*, 697 F.2d at 667.] Rather, the Court must look to multiple factors to assess the 'economic reality' of whether the plaintiff is so dependent on the alleged employer that she is an employee or is so independent that the plaintiff essentially is in business for herself."; *Hopkins*, 545 F.3d at 345 (affirming summary judgment for plaintiff's employee status irrespective of contractor agreement and plaintiffs' own belief they were contractors, opining: "'subjective beliefs cannot transmogrify objective economic realities. A person's subjective opinion that he is a businessman rather than an employee does not change his status'"); *Karna v. BP Corp. N. Am.*, 2013 U.S. Dist. LEXIS 37517, at *4, 39-40 (S.D. Tex. Mar. 19, 2013), *vacated on other grounds*, 11 F. Supp.3d 809 (S.D. Tex. 2014) (granting plaintiff's motion for summary judgment on employee status writing: "stray comments and contractual language cannot alter the overwhelming evidence of Karna's employee status"); *EEOC*

*v. Fawn Vendors*, 965 F. Supp. 909, 913 (S.D. Tex. 1996) (granting plaintiff's motion for summary judgment on employee status irrespective of contractor agreement).

Additionally, Judge Leonard Davis granted summary judgment for Plaintiffs on the issue of their independent contractor status in *Faulkner v. Patterson-UTI Drilling Co. LLC*, No. 6:12-CV-104, 2014 WL 12567150, at *6 (E.D. Tex. Jan. 30, 2014). In *Patterson*, Judge Davis found employee status under the following undisputed facts:

- Patterson did not hire welders on a project-by-project basis but engaged them to provide whatever welding services Patterson needed for as long as Patterson's general demand for welding persisted.

- There are no indications that the Plaintiffs contracted with Patterson for a specific project and then moved on or even renegotiated with Patterson for the next project.

These facts are identical to the facts presented by Plaintiffs to the Court in this motion.

Finally, in *Hobbs v. Petroplex Pipe & Constr., Inc.*, 360 F. Supp. 3d 571, 583 (W.D. Tex. 2019), the Court found employee status as a matter of law under the following facts for a group of oilfield welders:

- Plaintiffs were not hired on a project-by-project basis.

- Defendant hired Plaintiffs to meet all of Defendant's welding needs under its contracts with customers and used Plaintiffs to complete emergency maintenance jobs and other welding tasks at Defendant's shop during an industry downturn.

- Plaintiffs worked on a steady and reliable basis over a substantial period of time, which varied between four months, six months, nine months, and three years.

Again, these facts are completely consistent with the facts presented by Plaintiffs in this case.

### G.   Lease Supervisors, LLC's Defense is Limited to the LLC Operating Agreement.

Lease Supervisors, LLC's justification for the classification of Plaintiffs as "members" or non-employees lies solely on the Operating Agreements signed by the Plaintiffs. However, the

law of the Fifth Circuit is clear: "Neither contractual recitations nor subjective intent can mandate the outcome in these cases. Broader economic realities are determinative. *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1315 (5th Cir. 1976).

## V. CONCLUSION.

For these reasons, summary judgment of the issue of Plaintiff's employee status under the FLSA should be entered in Plaintiff's favor.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
HOMMEL LAW FIRM
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
903-596-7100
469-533-1618 Facsimile

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing instrument has been served on all counsel of record in accordance with the Rules of Civil Procedure on this 13th day of November, 2019.

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr