IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DON MALLORY and TY FARRELL, Individually and on Behalf of All Others Similarly Situated, | § § § § |
| Plaintiffs, | § § |
| VS. | § Civil Action No. 3:17-CV-3063-D § |
| LEASE SUPERVISORS, LLC, | § § § |
| Defendant. | § |

MEMORANDUM OPINION
AND ORDER

This is a collective action seeking unpaid overtime pay pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, brought by plaintiffs Don Mallory ("Mallory") and Ty Farrell ("Farrell"), individually, and on behalf of all others similarly situated under 29 U.S.C. § 216(b). The court must decide whether defendant Lease Supervisors, LLC ("Lease Supervisors") or plaintiffs Mallory and Farrell are entitled to summary judgment on the question whether Mallory and Farrell were employees of Lease Supervisors. Concluding that genuine issues of material fact preclude summary judgment, the court denies Lease Supervisors' motion for summary judgment and denies Mallory and Farrell's cross-motion for summary judgment.

I

Lease Supervisors is a closely held limited liability company whose members manage the day-to-day operations of oil wells and gas plants owned by O'Ryan Oil & Gas

("O'Ryan").[1] Lease Supervisors invoices O'Ryan for the services its members provide, and O'Ryan pays Lease Supervisors for its members' work based on a rate negotiated between Lease Supervisors and O'Ryan. The revenue generated by the members' services to O'Ryan is distributed to the members as a "guaranteed payment." Ps. Br. 9.

Since its inception, Lease Supervisors has had 20 members or fewer, with membership interest equally distributed among its members. Mallory became a member of Lease Supervisors in 2007, and Farrell became a member in 2009.[2] As members, Mallory and Farrell owned an interest equal to the interest owned by all other members and had the right, under the Regulations of Lease Supervisors, LLC ("Regulations"), to participate in the management and control of the company's affairs and operations.[3]

Mallory and Farrell, individually, and on behalf of all others similarly situated under 29 U.S.C. § 216(b), sue Lease Supervisors to recover unpaid overtime pay under the FLSA.

---

[1] Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence. *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) ( Fitzwater, J.)).

[2] They each made an initial $100 contribution, as required by the Regulations of Lease Supervisors, LLC.

[3] For example, together with Lease Supervisors' other members, Mallory and Farrell elected the company manager, ratified and approved the manager's actions, voted to add members or authorize the withdrawal of members, and voted to redistribute membership interests. Under the Regulations, Mallory and Farrell also had the right, as members, to vote on the removal of a manager, to authorize transactions and agreements unrelated to Lease Supervisors' stated purpose, to dissolve the company and oversee the distribution of its asset, and to access the company's financial information.

Lease Supervisors moves for summary judgment, contending that Mallory and Farrell were not employees of Lease Supervisors but were, instead, members or partners in business for themselves. Mallory and Farrell oppose the motion and cross-move for summary judgment,[4] contending that the court should conclude as a matter of law that they were employees of Lease Supervisors.

II

When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovants' claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovants must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovants' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovants' failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovants fail to meet this burden. *Little*, 37 F.3d

---

[4]Mallory and Farrell originally filed their cross-motion for summary judgment after the October 23, 2019 deadline for filing a summary judgment motion. The court need not decide, however, whether their cross-motion should be denied as untimely because it is denying the cross-motion on the merits.

at 1076.

To be entitled to summary judgment on a claim or defense on which the moving parties will bear the burden of proof at trial, the movants "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movants must demonstrate that there are no genuine and material fact disputes and that they are entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F. 3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

A

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Employee status is based on the economic realities of the relationship; the subjective beliefs of the alleged employees or employers are irrelevant to a worker's status. *See Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir. 1987). "The definition of employee under the FLSA is

particularly broad," and the contractual designation of the worker as an independent contractor is not necessarily controlling. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343, 346 (5th Cir. 2008) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting that the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles")). Instead, to determine whether a worker qualifies as an employee under the FLSA, this court focuses on "whether the alleged employee so economically depends upon the business to which he renders his services, such that the individual, as a matter of economic reality, is not in business for himself." *Thibault v. BellSouth Telecomms., Inc.*, 612 F.3d 843, 845 (5th Cir. 2010) (citing *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 332 (5th Cir. 1993)).

To aid in this inquiry, the court considers five non-exhaustive factors:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. No single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind.

*Hopkins*, 545 F.3d at 343 (citations omitted). The ultimate determination of whether an individual is an employee under the FLSA is a legal, not factual, one. *Brock*, 814 F.2d at 1045. But application of the five-factor test of economic dependence "will require a factual inquiry and a full record of the applicable facts." *Gate Guard Servs. L.P. v. Solis*, 2011 WL 2784447, at *10 (S.D. Tex. July 12, 2011).

Lease Supervisors relies heavily on the Regulations to argue that Mallory and Farrell, as members in the company, do not fit the FLSA definition of an employee. Employee status, however, is not determined by the parties' agreements, including the Regulations. "The touchstone for determining whether an individual is an 'employee' under the FLSA is economic dependence." *Floridia v. DLT 3 Girls, Inc.*, 2013 WL 127448, at *4 (S.D. Tex. Jan. 9, 2013) (noting that "[i]f Defendants are correct that Plaintiff held a role such that he was essentially a partner or owner of the company, Plaintiff may not be able to recover under the FLSA," but reciting five-factor economic realities test and ultimately concluding that fact issue precluded summary judgment on question whether plaintiff was an investor/owner in the company). Although the rights of Mallory and Farrell under the Regulations may be relevant to the jury's determination of whether they were economically dependent on Lease Supervisors, *see, e.g., Godoy v. Restaurant Opportunity Center of New York*, 615 F.Supp.2d 186, 195 (S.D.N.Y. 2009) (weighing "economic realities" of partnership agreement in determining employee status under FLSA, including plaintiffs' assumption of risks of loss and liabilities, opportunity to share in profits upon success, capital contribution in the form of "sweat equity," and right to share in management of company), they do not alone dictate whether Mallory and Farrell are employees of Lease Supervisors.

B

1

The court first considers the degree of control that Lease Supervisors exercised. Lease Supervisors contends that its members were autonomous and determined how to do their

jobs; that there was no one looking over their shoulders as to how to pump a well or operate a gas plant; that the time they spent on the job was dictated by the needs of the well or plant, which was something the members knew based on their years of experience; that members were assigned a general task such as pumping a well for which they were responsible, and it was up to the members to determine how to execute the task; and that the members' work was controlled by O'Ryan, not Lease Supervisors, and O'Ryan required daily reports to be submitted.

Mallory and Farrell respond that Lease Supervisors exercised control over their work. They maintain that they worked under the direction of supervisors; that they were assigned all of their work by Lease Supervisors; that they worked on a schedule set by Lease Supervisors; and that they were required to follow Lease Supervisors' rules.

In reply, Lease Supervisors disagrees that Mallory and Farrell worked under the direct supervision of Lease Supervisors, pointing to deposition testimony in which Mallory acknowledged that he could determine the hours he worked and set his own schedule. Lease Supervisors posits that all work was assigned by O'Ryan, Lease Supervisors' client; that O'Ryan decided when the services of Lease Supervisors were needed; that the locations where members provided pumping services depended upon their residence; that if a certain well or site did not fit within the member's radius, the member would not accept that work; and that it was O'Ryan, not Lease Supervisors, who required pumpers to submit daily production reports. Regarding the work schedule, Lease Supervisors argues that the schedule for the pumpers was determined by the nature of the work, i.e., whether a particular site

required a lot of attention or maintenance, and that, as professionals, Mallory and Farrell "determined what needed to be done and how to do it." Reply 5.

2

Degree of control refers to whether the plaintiff possesses "real independence" in the economic relationship. *Hopkins*, 545 F.3d at 343. "Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that [he] stands as a separate economic entity." *Brock*, 814 F.2d at 1049 (citation omitted); *see also Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995) (Fish, J.). But "the lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence." *Brock*, 814 F.2d at 1049 (citation omitted).

The court holds that the summary judgment evidence directly conflicts as to several variables relevant to the degree of control exercised by Mallory and Farrell, including whether they set their own schedules, *compare* Ps. App. Ex. D at 44:2-3[5] (Kayla Miller ("Miller"), Lease Supervisors' Corporate Representative, testifying that pumpers set their own schedules) *with* Ps. App. Ex. C at 88:19-89:6 (Mallory testifying that he followed regular work hours that were consistent throughout the time he worked for Lease

---

[5]The court is citing to the record in this manner because neither plaintiffs nor Lease Supervisors has complied with N.D. Tex. Civ. R. 56.5, which provides that "[w]hen citing materials in the record, as required by Fed. R. Civ. P. 56(c)(1)(A) or (B), a party must support each assertion by citing each relevant page of its own or the opposing party's appendix." Although the parties have sequentially numbered their appendixes, as required by Rule 56.6, neither party cites to the sequentially numbered pages, instead citing to exhibit number (or letter), and the page of each separately numbered exhibit.

Supervisors); whether Mallory and Farrell had control over the work they performed, *compare* Ps. App. Ex. D at 43:16-19 (Miller testifying that all of the pumpers' work was assigned to them by Lease Supervisors) *with* D. App. 2 at 30 (Mallory testifying that he would turn down work that was outside of his radius); and the amount of supervision that Lease Supervisors exercised over its workers, *see* Ps. App. Ex. B at 26:22-27:6 (Farrell testifying that he had two supervisors over him but that "they were never there.").[6] The court concludes that there are genuine issues of material fact that bear upon how the degree of control factor is to be weighed and that prevent both sides from satisfying their respective summary judgment burdens regarding the control factor.

C

The second factor focuses on the extent of the relative investments of the worker and the alleged employer. Lease Supervisors maintains that this factor weighs in favor of non-employee status because Lease Supervisors' only assets are the receivables or cash generated from the sweat equity of its members and any capital contributions. Mallory and Farrell respond that Lease Supervisors provided all of the equipment necessary for them to perform their duties as operators and that they did not incur any expenses in working for Lease

---

[6] "When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.) ). Here, and throughout this memorandum opinion and order, the court will summarize or provide examples of evidence that presents genuine and material fact issues that require a trial.

Supervisors other than a *de minimis* initial $100 contribution.

For purposes of the second factor, the relevant investments are "the amount the alleged employer and employee each contribute to the specific job the employee undertakes." *Thibault*, 612 F.3d at 847 (citing *Carrell*, 998 F.2d at 333). A reasonable jury could not find on the present summary judgment record that Lease Supervisors provided Mallory and Farrell with tools or other materials in connection with their work at O'Ryan's facilities. Instead, a reasonable jury could find that Farrell used some of his own tools, that O'Ryan provided Farrell with some of the larger tools he needed, and that Lease Supervisors did not provide Farrell with any tools or equipment for use at the O'Ryan facilities. *See* Ps. App. Ex. B at 38:5-39:3. Therefore, Mallory and Farrell have not established beyond peradventure that the relative investments favor the finding that they were employees. Nor is Lease Supervisors entitled to summary judgment based on this factor alone. Even if this factor is deemed to weigh in favor of independent contractor status, it is not dispositive and must be assessed in tandem with the other pertinent factors.

D

Under the third factor, the court considers the degree to which the worker's opportunity for profit or loss is determined by the alleged employer.

1

Lease Supervisors contends that the members' opportunities for profits and loss demonstrate that the members were not employees. It maintains that Bobby Allison, Lease Supervisors' former company manager, typically negotiated the contract rates for operating

the wells, plants, and leases; that members would service locations within a certain radius for efficiency purposes and to limit cost; and that members were free to, and did,[7] continue performing the same or similar work for existing customers/operators.

Mallory and Farrell respond that it is undisputed that they worked primarily, if not exclusively, for Lease Supervisors during their tenure with the company; that Lease Supervisors set their rate of pay without any negotiation; that they did not have to pursue consistent work from Lease Supervisors, but, instead, Lease Supervisors procured all of the work for them; that Lease Supervisors unilaterally decided to pay them a guaranteed payment regardless of the number of hours worked; that they were unable to negotiate the day rate; that Lease Supervisors did not share its profits or losses with them, even though it considered them to be members of the LLC; and that Lease Supervisors controlled the number of hours they worked.

Lease Supervisors argues in reply that Mallory and Farrell *did* negotiate their pay rates by designating a member to negotiate the pay rates for well sites on the members' behalf, and that *Lease Supervisors* did not realize profits or losses in the operation of O'Ryan's wells, but, instead, received payment for services in pumping and managing the wells and distributed these funds to the members in the form of guaranteed payments or benefits.

---

[7]For example, Lease Supervisors contends that Mallory provided contract pumping services for various operators before joining Lease Supervisors, while a member of Lease Supervisors, and after withdrawing membership from Lease Supervisors, and that he advertised for his business and actively solicited additional work while a member of Lease Supervisors.

2

There are genuine, material factual disputes that preclude the court from determining as a matter of law which side this factor favors. Some facts indicate that Lease Supervisors alone determined the income of Mallory and Farrell. Although as members of Lease Supervisors Mallory and Farrell had the right to vote to approve the rate negotiated by the manager, they did not have direct control or individual negotiating power regarding their own rates of pay. On the other hand, there is evidence that at least one member of Lease Supervisors (Mallory) was able to provide contract pumping services for various operators in addition to his work for Lease Supervisors, which would create the opportunity for Mallory to exert control over the profit he was able to realize. With these facts in dispute, the court is unable to determine as a matter of law whether this factor favors either side.

E

The fourth factor examines the skill and initiative required in performing the job. Lease Supervisors contends that its members were highly skilled in their profession, acquired their skillset or knowledge over years of experience providing oil and gas services, and "the members were responsible for the well, plant, or lease 24/7, and it required initiative by the members to determine what needed to be done, how to do it, and oversee that the work was accomplished." D. Br. 9. Mallory and Farrell counter that

> there is no evidence that the workers were required to have an advanced degree or certification to be hired as a pumper/plant operator. Plaintiffs received all of their job assignments from Lease Supervisors, LLC and were required to work using Lease Supervisors, LLC's tools, fill out Lease Supervisors, LLC's

> forms on each day. This factor favors Plaintiff's employee
> status.

Ps. Br. 14.

Courts generally "look for some unique skill set . . . or some ability to exercise significant initiative within the business." *Hopkins*, 545 F.3d at 345 (citations omitted). To satisfy this element, Mallory and Farrell must produce evidence that they could not "exert initiative in the operation of [the] business." *Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 752 (5th Cir. 1983). "Routine work which requires industry and efficiency is not indicative of independence and nonemployee status." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1314 (5th Cir. 1976).

Again, there are genuine, material factual disputes that prevent the court from determining as a matter of law which side this factor favors. Although it appears from the evidence that at least some level of specialized skill was required to perform the duties of pumper/plant operator[8] and that Lease Supervisors' members relied on their own initiative to determine how to manage a particular well or plant, there is a genuine fact issue whether members of Lease Supervisors had the ability to exercise significant initiative *within the business*. *Hopkins*, 545 F.3d at 345. For example, Mallory and Farrell have produced evidence that they received a "guaranteed payment" from Lease Supervisors, and Lease

---

[8]Mallory testified that the skills he used while a pumper as a member of Lease Supervisors had been acquired "over many years." D. App. Ex. 2 at 70-72. Farrell testified that, over the course of the 20 years he worked as operator of a plant, he developed "a pretty high skill set." *Id.* Ex. 3 at 24.

Supervisors does not point to any evidence that its members could increase their profits through efficient operation of O'Ryan's plants and wells. *See, e.g., Usery*, 527 F.2d at 1314 (reversing finding of independent contractor status where operators of laundry pick-up stations were "unable to exert initiative in the operation of their pick-up stations. All major components open to initiative—advertising, pricing, and most importantly the choice of cleaning plants with which to deal—[were] controlled by Pilgrim."); *cf. Eberline v. Media Net, L.L.C.*, 636 Fed. Appx. 225, 229 (5th Cir. 2016) (per curiam) (holding that "a reasonable jury could conclude that [plaintiff] 'exercise[d] significant initiative' as an installer" when "installers could receive more installation jobs, and thus more profits, based on their efficiency; that they could profit from performing custom work; that they could perform additional services for customers; and that they could control the days that they worked" (citation omitted)). The court is therefore unable to conclude as a matter of law on the present summary judgment record that this factor favors one side over the other.

F

Under the fifth factor, the court considers the permanency of the relationship between the worker and the alleged employer. Lease Supervisors acknowledges that "there is a degree of permanency in a pumpers' or operators' relationship with an operator," D. Br. 9, but it argues that this is consistent in the industry. Mallory and Farrell contend that because they worked for Lease Supervisors primarily, if not exclusively, for their entire tenure with the company, this factor weighs in favor of employee status.

"This factor weighs in favor of employee status when the work is done continuously

Supervisors does not point to any evidence that its members could increase their profits through efficient operation of O'Ryan's plants and wells. *See, e.g., Usery*, 527 F.2d at 1314 (reversing finding of independent contractor status where operators of laundry pick-up stations were "unable to exert initiative in the operation of their pick-up stations. All major components open to initiative—advertising, pricing, and most importantly the choice of cleaning plants with which to deal—[were] controlled by Pilgrim."); *cf. Eberline v. Media Net, L.L.C.*, 636 Fed. Appx. 225, 229 (5th Cir. 2016) (per curiam) (holding that "a reasonable jury could conclude that [plaintiff] 'exercise[d] significant initiative' as an installer" when "installers could receive more installation jobs, and thus more profits, based on their efficiency; that they could profit from performing custom work; that they could perform additional services for customers; and that they could control the days that they worked" (citation omitted)). The court is therefore unable to conclude as a matter of law on the present summary judgment record that this factor favors one side over the other.

F

Under the fifth factor, the court considers the permanency of the relationship between the worker and the alleged employer. Lease Supervisors acknowledges that "there is a degree of permanency in a pumpers' or operators' relationship with an operator," D. Br. 9, but it argues that this is consistent in the industry. Mallory and Farrell contend that because they worked for Lease Supervisors primarily, if not exclusively, for their entire tenure with the company, this factor weighs in favor of employee status.

"This factor weighs in favor of employee status when the work is done continuously

and for a long period of time, but evidence that the worker provided similar services to others simultaneously weighs in favor of independent contractor status." *Lopez v. Reliable Clean-Up & Support Servs., LLC*, 2018 WL 3609271, at *10 (N.D. Tex. July 27, 2018) (Fitzwater, J.) (citing cases). As with some of the other factors, the summary judgment evidence conflicts as to this factor. It is undisputed that Mallory and Farrell worked for Lease Supervisors continuously for an extended period of time and that their term of employment was "indefinite." Ps. App. Ex. D at 46:4-11. But there is also evidence that indicates that Mallory held additional jobs during the time he was a member of Lease Supervisors. D. App. Ex. 2 at 19-28. Therefore, the court holds that there are genuine, material factual disputes that prevent it from determining whether this factor favors employee or independent contractor status as a matter of law.

G

It is common in FLSA cases that "there are facts pointing in both directions" regarding the issue of employee status. *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 305 (5th Cir. 1998) (quoting *Carrell*, 998 F.2d at 334). Certain undisputed facts indicate that one factor weighs in favor independent contractor status. But due to genuine issues of material fact, the court is unable to determine which status the other four factors favor.

For example,[9] a reasonable jury could find that Mallory and Farrell were employees

---

[9]The court's recitation of the evidence that supports each side is not intended to be exhaustive given its typical practice not to set out in detail the evidence that creates a genuine

based on the evidence that each one worked for Lease Supervisors continuously for an extended and indefinite period of time, that Lease Supervisors assigned all of their work, and that Mallory and Farrell were compensated in the form of a "guaranteed payment," which was based on a rate negotiated between Lease Supervisors' manager and O'Ryan. But certain undisputed facts favor classifying Mallory and Farrell as independent contractors, such as Mallory's ability to perform work in addition to the work he did for Lease Supervisors. In the face of this conflicting evidence, the jury's weighing of the proof and assessment of the pertinent factors may hinge on an assessment of the credibility of the witnesses. This type of resolution is appropriate for a trier of fact, not for the court at the summary judgment stage. *See, e.g., Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987) ("The Supreme Court has not, however, approved summary judgments that rest on credibility determinations.").

The court concludes that, because there are genuine issues of material fact on the issue of employee status, Lease Supervisors' motion for summary judgment fails. *See, e.g., Lopez*, 2018 WL 3609271, at *11 (denying summary judgment motion on issue of whether plaintiff was employee or independent contractor where fact issues precluded court from deciding, as to certain of factors of five-factor test, whether factor suggested employee or independent contractor status). For this same reason, the court also holds that Mallory and Farrell have failed to establish beyond peradventure that they qualify as employees. *See, e.g., Wherley*

---

issue of material fact. *See supra* note 6.

*v. Schellsmidt*, 2013 WL 5744335, at *6 (N.D. Tex. Oct. 23, 2013) (Fitzwater, C.J.). Because neither Mallory or Farrell nor Lease Supervisors moves for summary judgment on any other ground, the court denies the parties' cross-motions.

\* \* \*

For the reasons explained, the court denies Lease Supervisors' motion for summary judgment and denies the cross-motion for summary judgment filed by Mallory and Farrell in conjunction with their response to Lease Supervisors' motion.

**SO ORDERED**.

January 13, 2020.

                                        SIDNEY A. FITZWATER
                                        SENIOR JUDGE